IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AUGUST MACK ENVIRONMENTAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-1054 |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN TRESCHOW, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AUGUST MACK ENVIRONMENTAL, INC.'S COMPLAINT**

Plaintiff August Mack Environmental, Inc. ("AME") for its complaint against Steven Treschow allege as follows:

**Nature of the Case**

1. AME files this action to enforce its rights under its Confidentiality and Non-Solicitation Agreement with Mr. Treschow dated March 4, 2022 ("Non-Solicitation Agreement" or "Agreement"). The Agreement is attached as *Exhibit A.* Mr. Treschow was employed by AME as a Senior Geologist and resigned from his position on May 15, 2023 to work for a direct competitor, Keystone Environmental, Health & Safety Services, Inc. ("Keystone"). Since his resignation, Mr. Treschow has violated his obligations under the Agreement by, among other things, soliciting AME's clients and diverting directly competitive business to his new employer, Keystone. AME brings this action seeking an injunction against Mr. Treschow to ensure compliance with his obligations and for damages.

**The Parties, Jurisdiction, and Venue**

2. AME is an Indiana corporation and is based in Indianapolis, Indiana. AME is therefore a citizen of Indiana.

3. Mr. Treschow resides in and is a citizen of Hollidaysburg, Pennsylvania.

4. This Court has diversity jurisdiction over the subject matter of this dispute under 28 U.S.C. § 1332, because AME is a citizen of a different state that than Mr. Treschow, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Mr. Treschow is subject to personal jurisdiction and venue within the Southern District of Indiana in accordance with Paragraph 12 of the Agreement which states that Mr. Treschow "consent[s] and submit[s] to the jurisdiction and venue of the state and federal courts located in Marion County, Indiana, in connection with any legal action relating to [the] Agreement." [Ex. A, ¶ 12 (emphasis omitted).]

**General Allegations and Factual Background**

6. AME is an environmental consulting firm that provides environmental due diligence, environmental building sciences, regulatory compliance, subsurface investigation, and remediation services to clients across the country.

7. Although based in Indianapolis, Indiana, AME has six offices located in Indiana, Michigan, Ohio, and Pennsylvania.

8. In Spring 2022, AME acquired Comstock Environmental ("Comstock") located in Lancaster, Pennsylvania to expand its footprint in the Midwest.

9. Prior to the acquisition, Mr. Treschow was employed by Comstock as a professional geologist. After the Comstock acquisition, Mr. Treschow continued his employment with AME as a Senior Development Services Manager.

10. As consideration for his continued employment with AME, Mr. Treschow signed the Non-Solicitation Agreement on March 4, 2022.

11. During his tenure with AME, Mr. Treschow served as project manager over many of AME's projects, primarily dealing with the remediation and site closure of leaking underground storage tanks.

12. A significant part of Mr. Treschow's duties involved serving as the client contact for AME projects and maintaining and cultivating AME's relationships with current and prospective clients.

13. Accordingly, while employed by AME, Mr. Treschow had direct contact with and established relationships and goodwill with AME's clients.

14. Also during his employment with AME, Mr. Treschow had access to and was provided with AME's confidential and proprietary information ("Confidential Information").

15. AME took reasonable steps to protect its Confidential Information, including the information Mr. Treschow acquired, by requiring certain employees to sign confidentiality agreements, non-compete agreements, and by storing the information in password-protected systems.

16. AME's Confidential Information is competitively sensitive and would be valuable in the hands of a competitor.

17. AME's Confidential Information that Mr. Treschow acquired is not a matter of public knowledge, is not readily ascertainable through public sources, and is valuable to AME.

18. Mr. Treschow acknowledged in the Agreement that he would be provided with such Confidential Information and that he would not disclose or use such Confidential Information. [Ex. A, ¶ 2-3.]

19. Mr. Treschow also agreed in the Agreement that for a two-year period following his resignation from AME, he would not:

> directly or indirectly, either for himself[] or any other person or entity, sell, or solicit the sale or provision of (or assist, supervise or manage others in the solicitation of the sale or provision of) any product or service that is similar to or competitive with any product or service of [AME], to or for . . . [a]ny actual [AME] client as to which, during the 18-month period prior to [Mr. Treschow's] separation of employment, [Mr. Treschow]:
>
> (A) engaged in solicitation or sales activity on behalf of [AME];
> (B) performed duties or functions on behalf of [AME]; or
> (C) received any Confidential Information.
>
> [Ex. A, ¶ 5(a)(i) (cleaned up).]

20. Mr. Treschow resigned from his employment with AME on May 15, 2023 and is therefore subject to the Agreement's two-year restrictive covenant.

21. After Mr. Treschow resigned, AME learned that Mr. Treschow contacted his former AME clients seeking to divert business to his new, current employer, Keystone, AME's direct competitor.

22. Shortly following Mr. Treschow's resignation, several AME clients with ongoing leaking underground storage tank projects demanded that AME cease work on their projects ("Former Clients") and notified AME that they were hiring a new environmental consultant.

23. While at AME, Mr. Treschow was the project manager overseeing AME's work on all of the Former Clients until his resignation.

24. Each of the Former Clients refused to identify their new environmental consultant and demanded that AME deliver their project files to them directly.

25. When transferring projects between environmental consulting firms, the industry practice is that outgoing consultants transfer records to the incoming consultants directly to ensure all pertinent information, both documented and undocumented, is accounted for. Accordingly, having several clients depart and request their project files directly during the same timeframe is highly unusual.

26. AME has since learned that, as a Keystone employee, Mr. Treschow has resumed the same services for all four of the Former Clients as those he provided as an AME employee.

27. Mr. Treschow and Keystone are aware of Mr. Treschow's obligations under the Non-Solicitation Agreement.

28. Mr. Treschow has interfered with, disrupted, and/or attempted to interfere with and disrupt the business relationships between AME and its clients.

29. Mr. Treschow's conduct has significantly damaged AME.

30. Mr. Treschow has directly violated his covenants under the Agreement by, among other things, soliciting current and former AME clients and selling and providing them services directly competitive with AME.

31. Unless enjoined, Mr. Treschow will continue to violate the Agreement and will continue to use AME's Confidential Information.

32. Because AME's damages will be difficult to ascertain and it cannot adequately be compensated in monetary damages, AME has no adequate remedy at law for such breaches, and AME is entitled to injunctive relief.

**BREACH OF CONTRACT**

33. AME re-alleges paragraphs 1- 32 of its Complaint.

34. The Non-Solicitation Agreement is a valid and enforceable contract.

35. AME has fully complied with all of the terms of the Non-Solicitation Agreement.

36. The foregoing acts and conduct of Mr. Treschow constitute breaches of the Non-Solicitation agreement.

37. As a result of such breaches, AME has been and will be injured by the loss of clients, revenues and profits, and by harm to its goodwill.

38. The conduct of Mr. Treschow demonstrates that he will continue such breaches, as a result of which AME is threatened with irreparable harm through the future loss of clients, revenues and profits, and damage to its goodwill.

39. The continued breaches by Mr. Treschow of the Agreement threaten to cause AME continuing future injuries in an amount that cannot be ascertained and for which AME cannot adequately be compensated in monetary damages.

40. AME has no adequate remedy at law and is entitled to a preliminary and a final injunction for Mr. Treschow's violations.

41. The threatened harm to AME, if such injunction is not granted, outweighs the risk of harm to Mr. Treschow if such injunction is granted.

42. The granting of such injunction will not violate public policy.

43. The Agreement entitles AME to obtain, among other things, injunctive relief, damages, and attorneys' fees and costs in connection with Mr. Treschow's breach of the agreement. [Ex. A, ¶ 7-8, 13.]

**Prayer for Relief**

WHEREFORE, August Mack Environmental Inc. therefore requests that the Court:

a. Issue a preliminary and permanent injunction, enjoining Mr. Treschow from violating his obligations under the Agreement;

b. Order Mr. Treschow to return to AME all of AME's Confidential Information in his or Keystone's possession, custody, or control;

c. Order Mr. Treschow to pay damages in an amount to be established at trial;

d. Award AME the reasonable attorneys' fees and costs it incurred in enforcing the Agreement; and

e. Grant such other relief as may be proper.

Respectfully submitted,

*/s/ Blake Burgan*
Blake Burgan, Atty. No. 18350-49
Kristine Gordon, Atty. No. 35238-71
TAFT STETTINIUS & HOLLISTER, LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
bburgan@taftlaw.com
kgordon@taftlaw.com

*Attorneys for Plaintiff August Mack Environmental, Inc.*