UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AUGUST MACK ENVIRONMENTAL, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:23-cv-01054-JRS-MKK ) |
| STEVEN TRESCHOW, | ) ) ) |
| Defendant. | ) |

**Order on Motion for Preliminary Injunction**

This case concerns a customer non-solicitation agreement between environmental consulting firm August Mack Environmental ("AME") and its former employee Steven Treschow. AME alleges Treschow violated the agreement when he took AME clients with him to a new firm. Now before the Court is AME's Motion for Preliminary Injunction, (ECF No. 4), and AME's Motion for an Evidentiary Hearing, (ECF No. 21), on the preliminary injunction motion. Treschow has not timely responded to either motion.

I.  **Legal Standard**

The Court, here sitting in diversity jurisdiction, applies "state substantive law and federal procedural law." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

The standard for a preliminary injunction is federal: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)). And "[a] preliminary injunction is 'an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)).

The Court would apply Indiana substantive law in assessing likelihood of success on the merits. (*See* Contract ¶ 12, ECF No. 17-9 (Indiana choice-of-law provision).)

## II. Discussion

The allegations are straightforward. And, because the Court is willing to accept them as true for the purposes of the preliminary injunction motion, AME's Motion for an Evidentiary Hearing, (ECF No. 21), is **denied.** Treschow worked for AME as an environmental consultant, helping AME clients with such things as site assessment and remediation of leaking underground storage tanks. (*E.g.*, Email Correspondence 7, ECF 17-6.) The environmental consulting business is characterized by longstanding client relationships between specific consultants and relatively few, high-value clients. (Pl.'s Br. Supp. 2–3, ECF No. 18.) AME, then, had as a matter of course client non-solicitation agreements with its employees. Treschow's contract with AME prohibits him for two years from "directly or indirectly . . . sell[ing] . . . any product or service that is similar to or competitive with . . . [AME] . . . to" company clients he had worked with in the past 18 months. (Contract ¶ 5a., ECF No. 17-9.) Treschow also agreed not to use AME's confidential information or property for his

own purposes. (*Id.* ¶¶ 2, 4.) In May 2023, Treschow left AME for another environmental consulting firm. Over the next few weeks, four of Treschow's AME clients left AME, apparently to follow Treschow to his new firm. (Pl.'s Br. Supp. 6–7, ECF No. 18.) The clients were forwarded their files to be used with the new firm. (*Id.*)

AME argues, and the Court agrees, that the alleged facts amount to a clear violation of Treschow's non-solicitation agreement. AME then argues that its non-solicitation agreement is valid under Indiana law so it will likely succeed on the merits; that the harms to its business are incalculable and therefore "irreparable"; and that the equities favor an injunction.

The Court need not walk through every element in the preliminary injunction analysis when one is dispositive. *See, e.g.*, *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1326 (7th Cir. 2022) (citing *Winter*, 555 U.S. at 31–33).

Here, there is no irreparable harm in the absence of a preliminary injunction. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015) (party seeking an injunction "must make a threshold showing that . . . absent preliminary injunctive relief, [it] will suffer irreparable harm *in the interim* prior to a final resolution") (emphasis added). The Court is faced with a done deal: Treschow left; he took four clients; otherwise business goes on as before. There is no suggestion that anything else is going to happen: the clients who wanted to leave with Treschow left; the ones who stayed, stayed. It is unlikely at this point any more clients will defect. And because the transfer of client files is routine, Treschow has at his new firm whatever

3

client information he had at AME. So what is an injunction going to do? The Court cannot make the clients return to AME. And if AME eventually prevails on the merits, it will be entitled to the lost profits on the four identifiable clients that Treschow took with him. That should be easy enough to measure. And if Treschow does manage to take more clients, those, too, will be identifiable and the resultant losses calculable.

The Court here follows the Seventh Circuit's teaching in *DM Trans, LLC v. Scott*, 38 F.4th 608 (7th Cir. 2022). There, eleven customers switched companies because of employees' solicitation in violation of a non-solicitation agreement. *Id.* at 618–19. The Seventh Circuit upheld the district court's denial of a preliminary injunction because there was no "irreparable harm." *Id.* In so holding, the court rejected the idea that "employees' violations of restrictive covenants[] invariably qualify as irreparable harm to the former employer." *Id.* at 618. Instead, the court reasoned "harm stemming from lost customers or contracts may be quantifiable if the lost customers or contracts are identifiable." *Id.* (quoting *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021)). The court thought that where the eleven lost customers were identifiable, there was no reason to suspect the losses from those customers would be incalculable. *Id.* at 618–19. The court extended that analysis to the use of confidential information. Because the use of confidential information is only harmful insofar as it leads to profits, and because the lost profits concerned the eleven identifiable customers, use of confidential information was not a separate "irreparable harm. *Id.* at 621. Ultimately, the court pronounced the general rule

that "[a] district court is within its discretion to find an adequate remedy at law, and thus no irreparable harm, where the corporation seeking injunctive relief can reasonably estimate the value of its lost profits." *Id.* at 620 (citing *Lawson Prod., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986)).

### III. Conclusion

This is a routine business dispute; nothing here calls for the "extraordinary and drastic remedy" of a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). AME, should it prevail on the merits, will be able to prove up its damages from losing four clients (and from Treschow's use of confidential information as well). A monetary award suffices for monetary losses. AME's Motion for Preliminary Injunction, (ECF No. 4), and its Motion for an Evidentiary Hearing, (ECF No. 21), are both **denied.**

**SO ORDERED.**

Date: 08/14/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

By CM/ECF to registered counsel of record.

By U.S. Mail to:

STEVEN TRESCHOW
145 Mulligan Drive,
Hollidaysburg, PA 16648

5